(39 Misc. Rep. 265.)

LE VIE v. FENLON et al.

(Supreme Court, Special Term, New York County. November, 1902.)

1. SPECIFIC PERFORMANCE—CONTRACT TO MAKE GIFT.
   One since deceased came to the home of a dressmaker, and promised her that, if she would give up her business, and stay with such person as maid and companion for the rest of her life, she would give her certain stock. *Held,* that the dressmaker, on performance of the contract on her part, is entitled to specific performance of the contract as against the executors of the decedent.

2. SAME—ADEQUATE REMEDY AT LAW.
   Where, in an action for specific performance, the defense of an adequate remedy at law has not been pleaded, plaintiff will not be compelled to abandon her equitable remedy.

Action by Mary E. Le Vie against John T. Fenlon and others for specific performance of a contract. Judgment for plaintiff.

Rufus I. Weaver, for plaintiff.
John V. Judge, for defendants.

GILDERSLEEVE, J. The action is brought in equity for a specific performance of a contract alleged to have been made by one Mary Crocheron, now deceased, with plaintiff, by which plaintiff was to have 10 shares of 8 per cent. preferred stock of the Cook & Bernheimer· Company, then belonging to said Crocheron, upon the death of said Crocheron, provided plaintiff took care of said Crocheron until her death. The complaint asks that the defendant executors be compelled to assign and deliver a certificate of 10 shares of said stock to the plaintiff, and that the defendants and all persons claiming under them be barred from any and all title, claim, or interest in the said 10 shares of stock. The answer denies the alleged agreement, and alleges that plaintiff has been fully paid for any services that she may have rendered to the deceased.

Upon the trial the plaintiff established by a fair preponderance of proof the following state of facts, viz.: Mary Crocheron, now deceased, came to plaintiff's home on or about March 15, 1900, and was taken ill in the latter part of that month. About April 1, 1900, the said Mary Crocheron told plaintiff that she would give to plaintiff 10 shares of 8 per cent. preferred stock of the Cook & Bernheimer Company if plaintiff would give up her work as a dressmaker, and stay at home with said Crocheron, as long as the latter lived, taking care of her· as her maid and companion. This stock then belonged to the said Crocheron, and, under this agreement, was to become the property of the plaintiff upon the death of said Crocheron. The plaintiff agreed to this proposition, and gave up her business as a dressmaker, and stayed at home and took care of said Crocheron until the latter died. The testimony shows that plaintiff devoted, on an average, 15 hours a day to the care of the said Mary Crocheron. During this time the deceased frequently alluded to this stock as being plaintiff's property, and when the check for the dividend thereon came the said Mary Crocheron directed that the defendant Bryan should get the check cashed and give the money to plaintiff, which

was done. The evidence introduced on behalf of defendants shows that the mother of plaintiff also received a number of gifts from the said Mary Crocheron, but there is not sufficient proof to connect plaintiff with the transactions between her mother and the said Mary Crocheron. The contract between said Crocheron and the plaintiff appears to be entirely separate from any agreement or arrangement between the mother of plaintiff and the said Mary Crocheron. On or about June 6, 1900, said Mary Crocheron died, leaving a last will and testament, made some time previous to the contract in suit, which will, after making a few legacies to parties other than plaintiff or her mother, left all the residue and remainder of the estate to the defendant James Bryan. At the time of the death of said Mary Crocheron the 10 shares of 8 per cent. stock of the Cook & Bernheimer Company passed into the possession and under the control of the defendant executors, upon whom plaintiff made a due demand, but who refused to assign and deliver the same to the plaintiff, on the ground that said stock formed part of the estate disposed of by the will, and did not belong to the plaintiff. The latter thereupon brought this action.

Although the answer did not set up a defense of insanity, the defendants were allowed upon the trial to amend so as to set up the "senile imbecility or dementia" of the deceased as a defense. Some evidence tending to show a mental incapacity on the part of the deceased was introduced, but this testimony is disputed on equally good authority, and the testimony appears to be fairly preponderating in favor of the claim of sanity and mental capacity. The doctors who testified for plaintiff examined the deceased at a time considerably nearer that of the making of the contract with plaintiff than did the doctors who were called for defendants, and they seem to be more positive in their conclusions as to the sanity of the deceased than is Dr. Boskowitz, who examined her in November, 1899, as to her alleged incapacity; while the defendants' other expert, Dr. Cooper, bases his opinion upon an examination made shortly before her death, and some months after the making of the contract with plaintiff. It must be held that under the proofs in this case Mary Crocheron was sane and mentally competent at the time she made the contract with plaintiff.

No claim of fraud is made in this case, and the defendants' counsel relies mainly on his contention that the plaintiff had an adequate remedy at law, and should have brought this action at trial term, instead of special term. The defendants, however, did not plead a want of equity jurisdiction in their answer, nor allege that plaintiff had an adequate remedy at law, and hence they were in no situation to insist upon the trial that an action in equity would not lie. See Watts v. Adler, 130 N. Y. 648, 29 N. E. 131. The court has jurisdiction over the parties and over the subject-matter of the action, and no occasion is here presented that requires a discussion of the question whether the plaintiff should have brought an action in conversion, or, as claimed by defendants' counsel, an action on quantum meruit for the value of her services, instead of this action in equity for a specific performance. The plaintiff is entitled to judgment di-

recting the assignment, transfer, and delivery of the said stock to plaintiff, with the dividends collected thereon since the death of said Mary Crocheron, together with interest on such dividends from the dates ,when the same were collected by defendants, besides the costs of this action.

Judgment accordingly.